IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOCELYN MILLER ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. |
| Vs. ) | |
| ) | Judge: |
| The CITY OF CHICAGO, a municipal corporation; ) | |
| CHICAGO POLICE OFFICERS ) | |
| David DI SANTI, Star # 18384 ) | |
| Milan BUBALO, Star # 2281 ) | |
| And Unknown Officers ) | |
| SABRA MANAGEMENT ) | |
| d/b/a: Rodeway Inn Chicago Evanston; ) | |
| CHOICE HOTEL INTERNATIONAL, INC ) | |
| ) | **JURY DEMANDED** |
| ) | |
| Defendants. ) | |

**COMPLAINT AT LAW**

Plaintiff JOCELYN MILLER, by and through her attorneys, Law Offices of Jeffrey Granich, complains of Defendants, City of Chicago and Chicago Police Officers David DiSanti, Milian Bubalo, currently unknown Chicago Police Officers, and Sabra Management d/b/a Rodeway Inn Chicago Evanston, and Choice Hotel International, Inc. and states as follows:

**Introduction**

1. In the early morning hours of June 24, 2018, Defendant police officers terrorized Jocelyn Miller at gun point after illegally entering her hotel room, illegally detaining her at gunpoint, and illegally searching her room without a valid search warrant, consent, or exigent circumstances.

2. The Defendant police officers' unlawful and unreasonable conduct is the product of policies and practices of the Chicago Police Department which has for years permitted its officers to violate the rights of civilians through unlawful use of force, unlawful warrantless searches of protected residences, including civilians registered hotel room, without fear of being disciplined or investigated for such misconduct.

3. For years CPD has failed to establish obviously necessary policies or safeguards to ensure its officers are trained in the constitutional limits of entering protected residences, including registered guest's hotel rooms without a warrant or exigent circumstances. This obvious failure of official policy and widespread practice has caused numerous illegal warrantless invasions of private family homes and protected hotel rooms in Chicago by Chicago police

1

officers prior to June 24, 2018. The City and its policymakers, for years, have been aware of this continuous constitutional problem but have continually turned a blind eye to the problems and failed to reform its obvious deficient policies, which in turn caused and was the moving force behind the constitutional violations committed against the Plaintiff.

4. Additionally, for years, the City of Chicago and the CPD has permitted its police officers to brutalize Chicago residents and civilians without any meaningful training, supervision, post incident review, or discipline. The CPD has allowed its police officer to engage in the constitutional misconduct as described in this complaint, without meaningful discipline to the officers and has maintained and encouraged the code of silence within the police department which in turn caused and was the moving force behind the constitutional violations committed against Plaintiff.

## Jurisdiction

5. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

6. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1332, 1343 and 1367.

7. Venue is proper under 28 U.S.C. § 1391(b). All events giving rise to the claims asserted in this complaint occurred within this district.

## Parties

8. At the time of all relevant events, Plaintiff JOCELYN MILLER ("Miller") was a resident of Milwaukee Wisconsin and a business invitee and guest at the Rodeway Inn Chicago-Evanston, located in Chicago, Cook County, Illinois. Plaintiff Miller is a single mother and works full time in Wisconsin.

9. At the time of all relevant events, Defendant Officers David Di Santi, #18384 and Milan Bubalo, #2281, and the currently unknown defendant police officers ("Defendant Officers") were police officers for the City of Chicago and were acting under the color of law and within the scope of their employment.

10. Defendant CITY OF CHICAGO ("City") is a municipal corporation existing under the laws of the State of Illinois.

11. SABRA MANAGEMENT, LTD., d/b/a Rodeway Inn Chicago-Evanston ("Rodeway Inn") is a company organized and existing under the laws of the State of Illinois, having been incorporated in the State of Illinois with an agent for service of process located in this state.

12. CHOICE HOTEL INTERNATIONAL, INC, ("Choice") is a corporation organized and existing under the laws of the United States of America, having been incorporated in the State of Delaware with an agent for services of process located in the State of Illinois, and

registered to do business in the State of Illinois. At all times relevant hereto, Choice was the franchisor of Rodeway Inn and responsible for training and setting guidelines and protocols of all its hotels and their management in its franchise system. Choice further held itself out as the owner and operator and exerted actual and/or apparent control over Rodeway Inn in relation to its operation and/or training and protocols of the establishment and employees.

## Facts

13. On June 23, 2018, Plaintiff Jocelyn Miller traveled to Chicago from her home in Wisconsin to attend a concert at the Aragon Ballroom. Plaintiff Miller made a reservation through Choice's website at the Rodeway Inn Chicago-Evanston for the night.

14. Plaintiff Miller pre-paid for her reservation at Rodeway Inn Chicago-Evanston, located at 6155 N Jersey Avenue, Chicago Illinois, through Choice's website. Plaintiff Miller received confirmation for her reservation from both Rodeway Inn and Choice.

15. Plaintiff Miller selected to reserve a room at Rodeway Inn specifically because Choice's website informed her that Rodeway Inn was a member of Choice's rewards program and her stay would provide her points on her Choice membership account. Plaintiff Miller believed at the time she booked her reservation, and at all times relevant hereto, that Rodeway Inn was owned and operated by Choice and relied on such when she reserved her reservation.

16. Defendants Rodeway Inn and Defendant Choice at all times relevant hereto each owed a special duty of care to Plaintiff Miller including a duty to provide for and assure her safety and security while at the Rodeway Inn Chicago Evanston establishment; to protect her from foreseeable or preventable harm, including but not limited unlawful and/or unconstitutional entry into her registered room by others, excessive force by others, assaults or attacks by others, including by Chicago Police Officers, while she was at Rodeway Inn.

17. On June 23, 2018, Plaintiff Miller checked in with the front desk personnel of Rodeway Inn and provided proof of her reservation, her identification, and her method of payment and received a room assignment and room key from the Rodeway Inn's personnel. Plaintiff Miller was assigned room 124.

18. At no time did Plaintiff Miller advise or notify Rodeway Inn or its personnel that anyone except herself and her guest was permitted access or entry into her assigned room. At no time did Plaintiff Miller advise or notify Rodeway Inn or its personnel that she consented to police officers or any government entry into her room without a valid search warrant.

19. After checking into Rodeway Inn, Plaintiff Miller went to the Aragon Ballroom to attend a live music concert.

20. Following the concert, Plaintiff Miller returned to her assigned room at Rodeway Inn. Shortly thereafter Plaintiff went to sleep in her assigned room.

21. In the early morning hours of June 24, 2018, Defendant Officers arrived at Rodeway Inn and requested access to Miller's room to a Rodeway Inn employee. Rodeway Inn's employee

did not require or ask Defendant Officers to produce a search warrant, did not call Miller's room to advise her police officers were requesting access to her room, did not advise Defendant Officers that no complaint of disturbance was made against that room, did not advise Defendant Officers that there had been no disturbance in Plaintiff's room, did not attempt to verify with Defendant Officers that they were at the correct establishment; did not attempt to seek any information from Defendant Officers on why they wanted access to Plaintiff Miller's room, did not deny or attempt to deny Defendant Officers access to Plaintiff's Miller's room in any way, and did not notify or attempt to notify Plaintiff Miller the Defendant Officers were given access to her room.

22. Instead of denying Defendant Officers access to Plaintiff Miller's room, Rodeway Inn, through its employee, granted Defendant Officers' access to Plaintiff Miller's room without Plaintiff's Miller's consent or a search warrant. At this time, Rodeway Inn, through its employee, knew that Defendant Officers were going to enter Plaintiff Miller's room without a warrant, without Plaintiff's consent, and without any reasonable grounds to do so, yet did nothing to stop or attempt to stop it.

23. As such, Rodeway Inn, through its employee, by providing Defendant Officers access to Plaintiff Miller's room without probable cause, exigent circumstances, or a search warrant did jointly engage with the Chicago Police Officers in violating the constitutional rights of Plaintiff Miller.

24. Prior to arriving at Rodeway Inn, Defendant Officers were aware that no complaint was made against any room at Rodeway Inn or at the address of Rodeway Inn.

25. Prior to arriving at Rodeway Inn, Defendant Officers did not receive any call or dispatch for any disturbance at Rodeway Inn or Plaintiff Miller's room.

26. Prior to arriving at Rodeway Inn, Defendant Officers did not receive any call or dispatch to respond to the address of Rodeway Inn or Plaintiff Miller's room.

27. Prior to arriving at Rodeway Inn, Defendant Officers were not dispatched to respond to Rodeway Inn at all.

28. Prior to arriving at Rodeway Inn, Defendant Officers were in fact dispatched to a completely different address at a completely different establishment.

29. Following Defendant Officers arrival to Rodeway Inn, in the early morning hours of June 24, 2018, Plaintiff Miller was awoken by loud and violent bangs on her door followed by Defendant Officers storming into her room with their loaded service weapons drawn at her and pointed at her head. Plaintiff Miller who had been asleep and in her pajamas and unaware of what was going on was immediately terrorized and placed in fear that she would be shot and killed. The Defendant Officers were continually yelling at her to get on the fucking ground all the while pointing loaded service weapons at her and her head.

30. Defendant Officers proceeded to search Plaintiff Miller's room and effects without legal authority to do so.

4

31. At no time prior to Defendant Officers entering Plaintiff's room did Defendant Officers knock or announce their office.

32. At no time prior to Defendant Officers entering Plaintiff's room was Plaintiff or her guest making noise, fighting, arguing, or in any other way causing any reasonable person or officer to believe that exigent circumstances existed to enter her room.

33. At no time prior to Defendant Officers entering Plaintiff's room had any complaint or allegation of a disturbance been made against Plaintiff or her room.

34. At no time prior to Defendant Officers entering Plaintiff's room did Plaintiff provide Defendant Officers consent to enter.

35. At no time prior to Defendant Officers entering Plaintiff's room did Defendant Officers have a search warrant to authorize their entry.

36. On June 24, 2018, Defendant Officers did intentionally enter Plaintiff's room without consent, without a search warrant, and without exigent circumstances.

37. On June 24, 2018, Defendant Officers did intentionally enter Plaintiff's room with their service weapons drawn.

38. Following Defendant Officers entry into Plaintiff's room on June 24, 2018, Defendant Officers did intentionally detain Plaintiff at gunpoint.

39. Following Defendant Officers entry into Plaintiff's room on June 24, 2018, Defendant Officers did intentionally search Plaintiff's room and property without consent.

40. Following Defendant Officers entry into Plaintiff's room on June 24, 2018, Defendant Officers did verbally assault and threaten Plaintiff.

41. At all times relevant hereto, Plaintiff Miller was obeying all laws, rules, and statutes of the United States of America, the State of Illinois, and the City of Chicago. Additionally, at all times relevant hereto, Plaintiff Miller was in compliance and had not violated any policy of Rodeway Inn or Choice.

42. Upon information and belief, the City of Chicago or the Chicago Police Department has not disciplined any of the police officers involved in the warrantless raid of Plaintiff's room, nor the fact that the officers' used unreasonable use of force against her by aiming the loaded service weapons at Plaintiff Miller.

43. Upon information and belief, prior to the warrantless raid of Plaintiff's room, the City of Chicago and the Superintendent of the Chicago Police Department were aware of the recurring problem and pattern of improperly executed search warrants and warrantless raids on Chicago civilians homes and registered hotel rooms by Chicago police officers

throughout this City, yet despite being aware of this recurring problem have turned a blind eye and failed to remedy the situation in any meaningful way.

44. At no time prior to Defendant Officers' entry into Plaintiff Miller's room did Rodeway Inn or any of its employees receive any complaint against Plaintiff Miller or her room to authorized them to provide Defendant Officers access to her room.

45. On June 24, 2018, Rodeway Inn employee did provide Defendant Officers access to Plaintiff Miller's room when Plaintiff Miller was a registered paying business invite.

46. At no time did Rodeway Inn employee attempt to stop or deny Defendant Officers from gaining access to Plaintiff Miller's room.

47. Rodeway Inn's employee was aware at the time he gave Defendant Officers access to Plaintiff Miller's room that Defendant Officers did not have a valid search warrant and that no complaint was made against Plaintiff Miller.

48. At no time did Rodeway Inn's employee notify or warn Plaintiff Miller that Defendant Officers were given access to her room.

49. At no time did Rodeway Inn train its employees that police officers or other government agents cannot access registered guests' rooms without a valid search warrant or exigent circumstances. Additionally, at no time did Rodeway Inn train its employees on the constitutional protections of its guests despite the obvious need to do so.

50. At no time did Choice train its franchisees, like Rodeway Inn, or establish any protocols to secure that its franchisees, like Rodeway Inn, adequately train its employees as to the constitutional protections of its guests despite the obvious need to do so.

51. Upon information and belief, despite Defendant Choice mandating training and protocols of its franchisees, Defendant Choice did not require its franchisees to train its employees on the constitutional protections of paying registered guests and the requirement for government officials to have a warrant to enter a paying guest's room when no emergency or exigent circumstances exist, despite the obvious need to do so.

52. Prior to the date of this incident, Defendant Choice, despite providing and requiring mandatory training for all General managers, assistant General Managers and front office managers of its franchisees, like Rodeway Inn, did not train, cover, or establish protocols for its franchisees, like Rodeway Inn, as to the legal requirements of providing police access to a paying registered guests room and/or ensure that its franchisees were trained in the constitutional protections of paying registered guests, despite the obvious need for such training.

53. As a direct result of all Defendants acts and/or omissions, individually and jointly, Plaintiff Miller was caused to be exposed to unnecessary, unreasonable, and terrifying conduct which has caused and continues to cause Plaintiff Miller to suffer emotional and psychological

distress and injury. Plaintiff Miller continues to suffer severe emotional pain to this day as a result.

## COUNT I
## 42 U.S.C. § 1983 – Excessive Force
## Defendant Officers, Rodeway Inn

54. Each Paragraph of this Complaint is incorporated herein.

55. As described above, the misconduct of Defendant Officers constituted unjustified and excessive force in violation of the Fourth and Fourteenth Amendment of the United States Constitution.

56. As described above, Defendant Rodeway Inn by providing Defendant Officers access to Plaintiff Miller's room without her consent or legal justification acted in concert with Defendant Officers in the Defendant Officers unjustified and excessive force in violation of the Fourth and Fourteenth Amendment of the United States Constitution.

57. The misconduct described in this Count was objectively unreasonable, unprovoked, unnecessary and excessive.

58. The misconduct described in this Count was undertaken intentionally with willful and wanton disregard to Plaintiff Miller's constitutional rights.

59. As a result of Defendant Officers' unjustified and excessive use of force, Plaintiff Miller has suffered injuries, including emotional, psychological, and mental distress.

## COUNT II
## 42 U.S.C. § 1983 – Unlawful Search and Seizure
## Defendant Officers, Rodeway Inn

60. Each Paragraph of this Complaint is incorporated herein.

61. As described in the preceding paragraphs, Defendant Officers violated Plaintiffs' Fourth Amendment right to be free from unreasonable search and seizure by seizing Plaintiffs without justification and without probable cause.

62. As described above, Defendant Rodeway Inn by providing Defendant Officers access to Plaintiff Miller's room without her consent or legal justification acted in concert with Defendant Officers in the Defendant Officers violation of Plaintiff Miller's Fourth and Fourteenth Amendment rights.

63. Defendant Officers searched Plaintiffs' registered room and persons without a search warrant and without probable cause to believe Plaintiff Miller was committing or had committed a crime in violation of the Fourth Amendment of the United States Constitution.

64. The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff Miller.

65. As a result of Defendant Officers unjustified and unreasonable conduct, Plaintiff Miller has suffered injuries, including emotional, psychological, and mental distress.

## COUNT III
### 42 U.S.C. § 1983 – Failure to Intervene
### Defendant Officers, Rodeway Inn

66. Each Paragraph of this Complaint is incorporated herein.

67. During the constitutional violations as described in this complaint, one or more of the Defendant Officers stood by without intervening to prevent the misconduct.

68. Additionally, during and prior to the constitutional violations as described in this complaint, Defendant Rodeway Inn failed to intervene to prevent the misconduct when having the opportunity to do so.

69. The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff Miller.

70. As a result of this failure to intervene to prevent the violations of Plaintiffs' constitutional rights, Plaintiffs pain and injury, as well as emotional, psychological, and mental distress. These Defendant Officers had a reasonable opportunity to prevent this harm but failed to do so.

## COUNT IV
### 42 U.S.C. § 1983 – *Monell* Claim
### Defendant City of Chicago

71. Each Paragraph of this Complaint is incorporated herein.

72. The misconduct describe above and in this count was undertaken pursuant to Defendant City of Chicago's official policies and/or widespread policy, custom, and practice that is so permanent and well settled as to constitute a custom or usage with the force of law in that the acts or omissions of Defendant City has: (1) failed to adequately train, supervise, and control its Chicago police officers from making unlawful and unconstitutional entries and searches of civilians registered hotel rooms and the use of force against individuals inside of those room; (2) failed to establish, despite the obviously need, any policies or safeguards that ensure Chicago police officers are trained in the constitutional protections of guests inside of their registered hotel rooms; (3) failed to have any adequate policy concerning the use of force and excessive force on, when making entry into a hotel room without a warrant; (4) failed to investigate, discipline, and hold accountable Chicago police officers that commit illegal warrantless entries into Chicago residences homes or hotel rooms; (5) failed to train or establish obvious safeguards to ensure that Chicago police officer do not execute searches at

the wrong address; and (6) failed to discipline officers that execute illegal searches with weapons drawn at the wrong address or location (as was done here).

73. Defendant City's failed policies, practices, and customs were so obviously deficient that it rises to the level of deliberate indifference and conscious disregard to Plaintiffs' rights.

74. The result of one or more of the failed policies, practices, or customs as described in this Complaint, Chicago police officers have engaged in and continue to engage in a pattern of constitutional violations similar to the misconduct that occurred against the Plaintiff. The City has persistently failed to respond, reform, discipline, investigate, and correct these practices which in turn was the moving force behind the constitutional misconduct committed against Plaintiffs.

75. Defendant City is well aware that unlawful warrantless searches of Chicago residents and their homes and hotel rooms have been a widespread problem for years, yet despite this knowledge the City has failed to make any reforms, failed to update its training programs to address these problems with its police personnel, and failed to hold its officers accountable for participating and engaging in such misconduct. Instead, the City has turned a blind-eye which causes Chicago police officers to believe that they may commit this misconduct with impunity.

76. The Defendant City has been aware that a problem exists with Chicago police officers unconstitutionally invading, searching, and using force against civilians and their homes and/or registered hotel rooms through numerous civilian complaints made against Chicago police officers for such actions, numerous civil rights lawsuits being filed for similar misconduct against its officers, and numerous settlements made for similar misconduct litigation against the City and its officers.

77. For example, the City of Chicago has been sued for similar misconduct for the November 7, 2017, unconstitutional entry into the home of a Chicago resident, where Chicago police officers pointed weapons at young children after illegal entering their home. *Mendez, et al. v. City of Chicago,* 18 CV 5560.

78. On August 29, 2014, Chicago police officers forcefully entered the home of a Chicago resident and her family, terrorizing the family with weapons, including a Chicago police officer pointing a loaded gun inches from the chest of a three-year-old child. As was widely reported, the City paid a settlement of $2.5 million in the case. *Simmons v City of Chicago*, 14 CV 2017.

79. Chicago police officers have a *de facto* policy, widespread custom, or practice of using unreasonable and unnecessary force against children and in the presences of young children, yet the City of Chicago has done nothing to investigate, discipline, or hold accountable officers for this misconduct. Instead, the City has turned a blind-eye which causes Chicago police officers to believe that they may commit this misconduct with impunity.

80. The 2017 United States Department of Justice investigation into the CPD concluded the CPD has a pattern and practice of using less-than-lethal, excessive force against children for

9

non-criminal conduct. (Investigation of the Chicago Police Department, U.S. Dept. Justice, Jan. 13, 2017, pp. 34-35). Yet, the City of Chicago has failed to reform any policies that require officers to avoid pointing guns and using force against children or in the presence of children whenever possible, despite the City being aware of the significant trauma that such violent actions cause young children.

81. The Defendant Officers' conduct toward Plaintiff in this case was done pursuant to Defendant City's widespread practice and custom of failing to have any policy requiring or guiding officers to avoid using force or brandishing their service weapons against individuals that pose no threat of harm.

82. The omission of any CPD policy regarding brandishing weapons was so obviously deficient that it rises to the level of deliberate indifference and conscious disregard to the constitutional rights of Plaintiffs and was thus the moving force and cause of Plaintiff's constitutional injuries.

83. The failed policies and practices of the City of Chicago directly caused and were the moving force of Plaintiff's highly predictable constitutional injury. The acts and/or omissions of the City of Chicago were done with conscious disregard and deliberate indifference to Plaintiff's constitutional rights.

84. As a direct result of the City of Chicago's failed policies and practices as described above, Plaintiff suffered injuries, including pain, suffering, and emotional distress and trauma.

## COUNT V
### Illinois State Law – Assault

85. Each Paragraph of this Complaint is incorporated herein.

86. The actions of the Defendant Officers set forth above created reasonable apprehension in Plaintiffs of immediate harmful contact to Plaintiffs' persons.

87. The Defendant Officers intended to bring about apprehension of immediate harmful contact with Plaintiff or knew that their actions would bring about such apprehensions.

88. The Defendant Officers' actions were the direct and proximate cause of Plaintiff's apprehension.

89. Plaintiff has been seriously harmed by Defendant Officers' actions.

## COUNT VI
### Illinois State Law – Trespass

90. Each Paragraph of this Complaint is incorporated herein.

91. Defendant Officers physically invaded Plaintiffs' right to an enjoyment of exclusive possession of their apartment.

92. Defendant Officers intentionally physically invaded Plaintiffs home by force without any legal right to do so and did so without consent of Plaintiffs.

93. Defendant Officers' actions caused a physical invasion of Plaintiffs' registered room.

94. Plaintiff was harmed by Defendant Officers' physical invasion of her registered room.

## COUNT VII – State Law Claim
## False Imprisonment

95. Each paragraph of this Complaint is incorporated herein.

96. As described above, Plaintiff Miller was restrained and detained by Defendant Officers, and thereby had her liberty to move about unlawfully restricted.

97. Defendant Officers had no reasonable ground to believe that Plaintiff was committing any offense that would justify the restraint and detention.

98. The actions of Defendants were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

99. As a result of this wrongful infringement of Plaintiff's rights, Plaintiff suffered injuries, including emotional distress.

## COUNT VIII – State Law Claim
## Intentional Infliction of Emotional Distress

100. Each paragraph of this Complaint is incorporated herein.

101. The actions, omissions, and conduct of Defendant Officers were extreme and outrageous. These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause or were in reckless disregard of the probability that this conduct would cause severe emotional distress to Plaintiffs, as is more fully alleged above.

102. As a direct and proximate cause of Defendants' actions, Plaintiffs suffered injuries, including emotional distress.

## COUNT IX – State Law Claim
## *Respondeat Superior*

103. Each paragraph of this Complaint is incorporated herein.

104. In committing the acts alleged in the preceding paragraphs, Defendant Officers were an employee of Defendant City of Chicago acting at all relevant times within the scope of his employment.

105. Defendant City of Chicago is liable as principal for all torts committed by its agents.

## COUNT X – State Law Claim
## Indemnification

106. Each paragraph of this Complaint is incorporated herein.

107. In each act described above, Defendant Officers were acting with the scope of their employment as a Chicago Police Officers employed by Defendant City of Chicago.

108. Illinois law provides that the City of Chicago must pay any civil and constitutional rights judgments for damages for which employees are liable within the scope of their employment.

109. Defendant Officers were employees of Defendant City of Chicago and acting within the scope of their employment and under color of law in committing the misconduct described herein.

110. Pursuant to the provisions of Illinois law, including but not limited to 105 ILCS 5/10-20.20, Defendant City of Chicago is required to pay all sums due by judgment against Defendant Officers.

## Count XI
## Negligence, Gross Negligence, Recklessness, and
## Willful Wanton and Outrageous Misconduct
## (Against Rodeway Inn and Choice)

111. Each paragraph of this Complaint is incorporated herein.

112. Plaintiff Miller's injuries and damages were caused by the individual, joint, and/or alternative negligence, carelessness, gross neglect, recklessness, willful, wanton and/or outrageous misconduct of Defendant Rodeway Inn and/or Defendant Choice, acting as aforesaid, which included, among other things, the following:

   a. Providing Defendant Officers access to Plaintiff Miller's room when they had no right to do so;
   b. Failing to check whether any complaint had been made against Plaintiff Millers room prior to providing Defendant Officers access to Plaintiff room;
   c. Failing to deny Defendant Officers access to Plaintiff Miller's room;
   d. Failing to request Defendant Officers produce a search warrant to obtain access to Plaintiff Miller's room;
   e. Failing to protect Plaintiff Miller from unlawful invasion into her room by others;
   f. Failing to ensure that Defendant Officers were at the correct establishment prior to providing access to Plaintiff Miller's room;
   g. Providing a key to Defendant Officers to Plaintiff Miller's room when had no right to do so;
   h. Failing to deny Defendant Officers to a key to Plaintiff Miller's room;

    i. Failing to notify or warn Plaintiff that they gave Defendant Officers a key to her room;
    j. Failing to notify Plaintiff that they were assisting Defendant Officers in gaining access to her room;
    k. Facilitating Defendant Officers' entry to Plaintiff's room when they had no right to enter it;
    l. Failing to deny Defendant Officers assistances in entering Plaintiff Miller's room;
    m. Failing to prevent Defendant Officers from accessing Plaintiff Miller's room;
    n. Failing to assure Plaintiff Miller's safety under the circumstances;
    o. Failing to timely, adequately and/or properly protect Plaintiff Miller from dangers of which Defendants' were aware and/or reasonably should have been aware under the circumstances;
    p. Compromising or destroying Plaintiff Miller's safety under the circumstances;
    q. Violating Plaintiff Miller's reliance and trust that Defendants would fully comply with the special duties of care they as innkeepers owed to her, particularly as it relates to her safety and security;
    r. Failing to train its employees on the constitutional protections afforded to paying registered guest of their establishment;
    s. Failing to train its franchisees, like Rodeway Inn, on the constitutional protections afforded to paying registered guest of the motel;
    t. Enticing Plaintiff Miller into reserving a room through Choice's membership program at Rodeway Inn and giving Plaintiff Miller a false sense of safety and security by holding itself out as the owner and operator of the Rodeway Inn;
    u. Failing to ensure that all franchisees, like Rodeway Inn, implement training of employees on the constitutional protections afforded to paying registered guest of their establishments;
    v. Failing to notify Defendant Officers that they were at the wrong establishment;
    w. Failing to notify Defendant Officers that they were requesting access to the wrong room;
    x. Failing to timely, properly and/or adequately evaluate, train and/or supervise personnel with regard to, among other things, providing access to registered guests room by others and securing the safety of its registered guests.
    y. Providing Plaintiff Miller with a false sense of security while a guest at Rodeway Inn;
    z. Otherwise being either careless, grossly negligent, reckless, willful and/or wanton as may be determined through discovery or at the time of trial.

113. As a direct result of Defendant Rodeway Inn's and/or Defendant Choice's acts or omissions, Plaintiff Miller suffered severe injury and harm.

## COUNT XII – State Law Claim
### *Respondeat Superior*
### Against Rodeway Inn

114. Each paragraph of this Complaint is incorporated herein.

115. In committing the acts alleged in the preceding paragraphs, Rodeway Inn was an agent of its employees that were acting at all relevant times within the scope of its employment with Defendant Rodeway Inn.

116. Defendant Rodeway is liable as principal for all torts committed by its employees.

## COUNT XIII – State Law Claim
### *Respondeat Superior*
### Against Choice

117. Each paragraph of this Complaint is incorporated herein.

118. In committing the acts alleged in the preceding paragraphs, Rodeway Inn was an actual or apparent agent of Defendant Choice acting at all relevant times within the scope of its actual or apparent agency with Defendant Choice.

119. Defendant Choice is liable as principal for all torts committed by its agents.

*****

**WHEREFORE**, Plaintiff Jocelyn Miller requests that this Court enter judgment in her favor on each count and against the Defendants, awarding compensatory damages, attorneys' fees and costs, along with punitive damages against Defendant Officers, Defendant Rodeway Inn, and Defendant Choice and any further relief as the Court deems just and appropriate.

### Jury Demand

Plaintiffs hereby demands a trial by jury pursuant to Federal Rules of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

s/ Jeffrey B. Granich
One of Plaintiffs' attorneys

Law Office of Jeffrey B. Granich
53 W. Jackson, Suite 1028
Chicago, Illinois 60604
312-939-9009
JeffreyGranich@gmail.com
Atty No.: 6207030